[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
INTRODUCTION
The captioned matter is a presentment by the Statewide Grievance Committee (Committee) of the respondent Alan M. Solomon ("Respondent'). an attorney, to the court for alleged misconduct. The Committee alleges that the Respondent violated what, at the time of the alleged violations, was known as Rule 8.4(c) and what, in verbatim language, is now known as Rule 8.4(3) (the "Rule") of the Rules of Professional Conduct, which provides:
It is professional misconduct for a lawyer to:
 (3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation
FACTS
From matters admitted in the pleadings, and from the clear and convincing evidence presented at the hearing on this matter, the following facts have been established or found:
 1) The Respondent was admitted to the Connecticut bar in 1957, and he practiced full-time in Connecticut until his semi-retirement on December 31, 1999. Since that date, he has practiced part-time in CT Page 12005 Connecticut;
 2) In the past 25 years. the Respondent has not handled real estate closings or foreclosure actions, and he has been principally a litigator;
 3) Sometime prior to May 30. 1989, Attorney Steven Tomeo (Attorney Tomeo), who was known to the Respondent, contacted the Respondent and asked if he would provide one-half the principal of a loan, to be secured by a secondary mortgage.*
which would be placed and serviced by Attorney Tomeo. The Respondent knew Attorney Tomeo to be a real estate lawyer who represented banks, and he forwarded to Attorney Tomeo funds to be used in making the loan;
 4) On May 30. 1989, Attorney Tomeo, on behalf of the Respondent and another person (the "other lender"). advanced to William C. and Cheryl A. Gilmore (collectively, the "Gilmores") loan proceeds of $55,000. which he arranged to have secured by a secondary mortgage ("mortgage") on real property owned by the Gilmores in Woodstock, Connecticut;
 5) On May 30, 1989. the Respondent was not licensed by the state as a secondary mortgage lender pursuant to § 36a-510, et seq., of the General Statutes (all further section references are to the General Statutes);
 6) Sections 36a-511 and 36a-512 (collectively, the "applicable statutes"), when read together, provide that a secondary mortgage loan in excess of $20,000 can only be made by a licensed secondary mortgage lender:
 7) Tomeo brought an action, on behalf of the Respondent and the other lender, to foreclose the mortgage (the "foreclosure action");
 8) Under date of August 1, 1994, the attorney for the Gilmores filed, in the foreclosure action, a "Third Special Defense" which alleged, inter alia:
CT Page 12006
 "Upon information and belief, at all times material hereto, neither of the Plaintiffs was a licensed second mortgage lender in accordance with Conn. Gen. Stat. § 36-224b (a). "and.
 "The alleged Mortgage was made by the Plaintiffs in contravention of Conn. Gen. Stat. § 36-224b (a)."
 9) Under date of August 1. 1994. the attorney for the Gilmores also filed in the foreclosure action a counterclaim containing a "Fourth Count" which realleged the allegations quoted in Finding 8;
 10) Under date of May 17. 1995, the attorney for the Respondent, who was then an associate in the law office in which the Respondent was a partner. filed a reply to the Gilmores' Third Special Defense and an answer to the Fourth Count in the Gilmores' counterclaim admitting that the Respondent was not a licensed second mortgage lender and denying that the Respondent's taking the mortgage was a violation of the applicable statutes:
 11) On February 15. 1996. an examiner (the "examiner") in the Consumer Credit Division, Department of Banking. State of Connecticut wrote to the Respondent stating, inter alia:
 "The banking commissioner is charged with the duty of administering Chapter 668. Part I, (A) 
(B) of the Connecticut General Statutes, which concern first and second mortgage lenders and brokers, respectively, copies of which are enclosed.
 "It has recently come to our attention through the complaint of Mr. William C. Gilmore (copy enclosed) that you are engaged in the business of granting or acting as broker for, first and/or second mortgages without the required license (s). Accordingly, we are providing you with an opportunity to provide us with a description of your activities, in order that we CT Page 12007 can determine whether the above mentioned Chapters are applicable to your lending activities."
 12) On March 26, 1996, the examiner again wrote to the Respondent stating:
 "To date we have not received a reply to our correspondence of February 14, 1996, regarding the complaint of Mr. William C. Gilmore which had previously been sent.
 "Your prompt attention to this important matter will be appreciated."
 13) For a period of time, the Respondent appeared pro se in the foreclosure action;
 14) In support of a motion for summary judgment ("motion for summary judgment") filed by Tomeo in the foreclosure action, the Respondent filed, with the court. two affidavits, one executed by him on March 23, 1996 and the other (the "supplemental affidavit") executed by him on March 28. 1996;
15) The supplemental affidavit avers, in part:
 "At the time of the making of the loan which is the subject of this foreclosure action, I was exempt from the license requirement of C.G.S. § 36a-511 (formerly § 36-224b) because I granted fewer than 5 secondary mortgage loans in the twelve consecutive months prior to the making of this loan, and I granted fewer than 5 secondary mortgage loans in the twelve months following the making of this loan. I did not make any loans in any twelve consecutive months where the aggregate of said loans exceeded $100,000."
16) The supplemental affidavit concludes:
 "I make these statements based upon my personal knowledge. information and belief."
 17) No amendment to. or correction of. the CT Page 12008 supplemental affidavit was ever executed by the Respondent after the examiner sent his letters of February 15, 1996 and March 26. 1996:
 18) At the time the Respondent and the other lender took the mortgage, the Respondent was unaware that doing so was a violation of the applicable statutes; and,
 19) The Respondent did not review the law concerning the taking of second mortgages by unlicensed persons before he executed the supplemental affidavit.
DISCUSSION
The Committee argues that the Respondent committed two distinct violations of the Rule: first, by making a secondary mortgage loan in violation of the applicable statutes; and, second, by filing the supplemental affidavit which, the Committee claims, is deceitful because it was intended to persuade the court which heard the motion for summary judgment that the Respondent met all the criteria for exemption from the secondary mortgage lender licensing requirements set out in § 36a-512, although the supplemental affidavit did not address one of those criteria (that no loan by an exempt lender can exceed $20,000). which is the only one of those criteria which the Respondent did not meet in regard to the mortgage. and because, contrary to his representation in the supplemental affidavit that its contents were based on his "personal knowledge, information and belief." the Respondent did not then actually know whether he came within that exemption.
Violation of the Applicable Statutes
The Committee claims that a violation of the applicable statutes is a violation of the Rule. The Respondent's reply is that if he violated the applicable statutes, that violation was unintentional and such an unintentional violation does not rise to the level of misconduct within the meaning of the Rule. In Finding 18, the court found that the Respondent was unaware of the applicable statutes when he took the mortgage, so that his violation of them was unintentional. Accordingly, the issue now to be decided is whether an unintentional violation of the applicable statutes can constitute a violation of the Rule.
In its decision on a motion to dismiss filed by the Respondent at the conclusion of the Committee's evidence, the court ruled that scienter is not a necessary element of a violation of the Rule by an attorney. CT Page 12009 Therefore, an unintentional violation of at least some statutes could constitute a violation of the Rule. The issue thus framed is whether the Respondent's unintentional violation of the applicable statutes constitutes a violation of the Rule.
There clearly are situations in which the violation of a statute by an attorney would be mere malum prohibitum and would not constitute misconduct within the Rule. For example, many traffic or zoning violations might not, depending on the facts, violate the Rule.
As to this case, the Committee has not presented evidence from which the court can find that the Respondent's violation of § 36a-511 rose to the level of misconduct. Had the Committee established that the Respondent was a frequent, and by inference a sophisticated. second mortgage lender rather than a one-shot investor, or had the Committee established that the terms of the mortgage were unreasonable, or had the Respondent's violation been of a provision more closely related to the practice of law than are the applicable statutes, then the court might have found misconduct within the Rule. However, in the abence of such evidence. the court concludes that the Respondent's violation of the applicable statutes. by itself, does not constitute misconduct within the Rule.
Execution And Filing of The Supplemental Affidavit
The court has found that:
 1) A special defense and counterclaim were filed in the foreclosure action (approximately eighteen months before the supplemental affidavit was executed) which alleged that the mortgage was taken by the Respondent in violation of the applicable statutes;
 2) Approximately ten months before the execution of the supplemental affidavit, an associate in the Respondent's law office filed pleadings in the foreclosure action admitting that the Respondent was not licensed;
 3) More than a month before the execution of the supplemental affidavit, the Respondent received a letter from the Department of Banking stating that an allegation had been made that the Respondent was engaging in activities for which he did not hold the necessary license, and enclosing copies CT Page 12010 of the relevant statutes; and,
 4) At about the time of the execution of the supplemental affidavit, the Respondent received a follow-up letter from the Department of Banking requesting a response to its earlier letter.
From those and other findings, the court concludes that:
 a) The supplemental affidavit was intended to persuade the court which heard the motion for summary judgment that the Respondent was exempt from the second mortgage licensing requirements when he took the mortgage;
 b) The supplemental affidavit was misleading to the court which heard the motion for summary judgment:
 c) From the pleadings in the foreclosure action in which, for a period of time, the Respondent appeared pro se, and from the correspondence from the examiner, either the Respondent was aware of the fact that the supplemental affidavit was misleading or. if he was not aware of that fact, he was derelict in not informing himself in that regard:
 d) If the Respondent was aware that the supplemental affidavit was misleading, his execution of it was misconduct within the Rule;
 e) If the Respondent was merely derelict in not informing himself as to the truth of the statements contained in the supplemental affidavit after he received the examiner's letters, that dereliction, committed by an attorney, was grossly inappropriate behavior by one held out to members of the public by the judicial branch of our government as being sufficiently trustworthy to have entrusted to him their business and liberty, and that dereliction constituted misconduct within the Rule; and,
 f) The representation by the Respondent in the supplemental affidavit that its contents were CT Page 12011 "based upon my personal knowledge, information and belief" was false, as established by the Respondent's testimony that he never looked into the law concerning second mortgage licensing requirements and so had no basis for that representation, and that false representation constituted misconduct within the Rule.
CONCLUSION
The court will hear the parties on the issue of the action to be taken in regard to the Respondent's misconduct. At that time, the Committee will present the history, if any, of prior disciplinary actions against the Respondent.
G. Levine, J.